

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

*Au  H-LA-47*

May 7, 1969

Senator A. M. Aikin, Jr.
Chairman, Committee on Education
Capitol Building
Austin, Texas

Opinion No. M- 391

Re:  Constitutionality of
Senate Bill 631 re-
lating to state
tuition equalization
and constitutionality
of Senate Bill 485
establishing an ed-
ucational tuition

Dear Senator Aikin:                              scholarship program.

You have requested an opinion from this office concerning the constitutionality of Senate Bills 631 and 485, both of which are similiar and will be considered together in this opinion in that each bill authorizes payment of tuition scholarship for individuals who choose to attend private colleges and universities and otherwise qualify for such scholarships under a state administered program.

Senate Bill 631 provides in Section 1, as follows:

"LEGISLATIVE FINDINGS AND POLICY. (a) The legislature finds that the demand for higher educational facilities and services is increasing at a rate which places a severe strain on the ability of the state to supply them, and particularly challenges the resources available to provide additional campuses, buildings, equipment, and other capital investments. In this state there exist many excellent privately-supported colleges and universities which make large contributions toward raising the educational level of the people of this state and which thereby assume a large part of the state's acknowledged responsibility to provide for the education of its citizens. To encourage enrollment at these institutions is to relieve the strain which would otherwise be placed on

-1933-

the public institutions. The legislature finds that the granting of assistance to resident students at the privately-supported colleges and universities will stimulate enrollment at these institutions, and thus promote the objectives of the state to improve educational opportunities at all levels. The legislature therefore declared that the granting of such assistance will promote essential public policies, will be accompanied by adequate consideration, and will not be a gratuitous grant of public funds to private interests in violation of the Constitution.

"(b) In view of the findings and determinations expressed in Subsection (a) of this section, it is the public policy of this state to grant financial assistance to Texas residents enrolled in the privately-supported colleges and universities of this state under the terms and conditions prescribed in this Act and to the extent provided by legislative appropriations."

Section 3 sets out certain definitions to be used in the Act, defining "resident student," "eligible institution," "designated officer" of an institution, "eligible course," and "ineligible course."

Section 4 provides for the making of an application for tuition assistance for the resident student by the designated officer of an eligible institution. The application must be accompanied by a signed, sworn report on a form prescribed by the comptroller, giving enumerated pertinent information as to the applicant, his educational status and progress, and other information to be required in order to determine compliance with the requirements of this Act.

"Sec. 5. TUITION ASSISTANCE GRANT. On receipt of an application and enrollment report from an

eligible institution, the comptroller shall compute the amount of the tuition assistance grant under this Act as follows:

For each resident student, $20 for each semester-hour or its equivalent, of eligible courses which he completed (passed or failed but not dropped) during the semester or term as indicated by the enrollment report. However, the total amount for each staudent is limited to a maximum of $300. The proper amount shall be paid directly to the student by warrant drawn on the state treasury.

"Sec. 6. REGULATIONS. The comptroller may make reasonable regulations, consistent with the purposes and policies of this Act, to enforce the requirements, conditions, and limitations expressed in this Act. Copies of all regulations shall be distributed to each eligible institution."

Senate Bill 485 provides in Section 1 thereof as follows:

"Section 1. The Legislature finds and declares that the diffusion of knowledge is a matter of primary concern in the interests of the general welfare of the people of this State as a whole; that Article VII of the Constitution of this State constitutes a declaration of public policy obligating the Legislature to make all provision reasonably possible for the education of the citizens of the State; that the conditions and demands of modern society require excellence and extensiveness in the field of higher education as well as in secondary; that the number of persons desirous of securing and capable of attaining a college education is increasing more rapidly than existing State-supported facilities for higher education can be expanded; that the securing of properly trained and qualified faculty members is a growing serious problem; that the costs of both physical plants and institutional operation are rising at such at rate that it is neither feasible nor financially practical for State institutions to assume the entire burden of higher education in this State; that this State is fortunate in having within its boundaries a goodly number of independent accredited colleges and universities offering both general and specialized courses of study substantially identical to or comparable with those provided by the State-supported colleges and universities; that the independent accredited colleges and universities have established plants and qualified administrators

and faculty and staff members; that the high tuition which the independent colleges and universities are normally forced to charge has made those institutions unavailable to many of the citizens of the State who would otherwise have chosen to take advantage of their facilities and has resulted in many instances in the operation of those institutions with less than maximum enrollment; and that by the establishment of a Tuition Scholarship Program aiding qualified students to enroll in independent colleges and universities, the State of Texas can at minimum expense fulfill its obligation of providing for the education of its citizens."

Section 2 provides for a special fund called the "Tuition Scholarship Fund" for such purposes of appropriation by the Legislature and ultimate deposit in the State Treasury.

Section 3 requires the Coordinating Board, Texas College and University System, to administer the Fund and Section 4 sets out the necessary qualifications for resident applicants, including educational status and progress, and such other "requirements for qualifications as the Board may establish...on the basis of aptitude, past performance in academic studies, financial condition, course of study desired to be pursued, the demands of the economic community of the State of Texas; and other factors as the Board may deem advisable."

Section 5 provides for distribution of funds to qualified applicants in an "amount by which the tuition charge at the accredited independent college or university exceeds the tuitio for the same course of study at the University of Texas, but no one applicant in any one semester may receive as a Tuition Scholarship an amount in excess of $300.00. "It further prohibits the expenditure of any portion of the fund for any perso

"to attend a theological seminary or ministerial school, or, in any school, to pursue a course of study designed as preparation for any type of church-oriented work or profession."

Section 6 gives the Board power to adopt rules and regulations to effectuate the purposes of the Act and Section 7 authorizes the Board to delegate to the Commissioner of the Coordinating Board the powers, duties, and functions authorized in this Act. Section 8 requires the Board to make an annual report to the Governor as to the number of scholarships granted, names of recipients, and other information describing the effectiveness of the state program. Section 9 discloses the "urgent need to make higher educational facilities available to the greatest number of Texas residents at the lowest possible cost to the State..."

Several constitutional questions which appear to be pertinent, concern whether the bills violate Section 51 of Article III and Section 6 of Article XVI, Constitution of Texas.

Section 51 of Article III declares, in part:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal or other corporations whatsoever;..."

Section 6 of Article XVI provides, in part:

"No appropriation for private or individual purposes shall be made..."

The purpose of these two sections of our constitution "... is to prevent the application of public funds to private

purposes; in other words, to prevent the gratuitous grant of such funds to any individual or corporation whatsoever. . . ." State v. City of Austin, 160 Tex. 348, 331 S.W. 737, 742 (1960).

Section 1 of Article VII of the Constitution of Texas makes it the duty of the Legislature to make suitable provision for an efficient system of public free schools, leaving the manner of the support and maintenance of education in the state to the discretion of the Legislature, it being recognized therein that, "A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people." Our Supreme Court has held that this constitutional provision will be liberally construed and that the enumeration therein of what the Legislature may or shall do in providing a system of education is not to be regarded as a limitation on the general power of the Legislature to pass laws on the subject. Mumme v. Marrs, 120 Tex. 383, 40 S.W.2d 31, 33 (1931).

We are unable to find any case authorities which hold that educational scholarships are not a proper public and governmental purpose.

In Attorney General Opinion No. C-474 (1965), it was concluded that, pursuant to legislation therein considered, vouchers issued to colleges and universities which provided for teacher training assistance under the state plan approved by the supervising state agency were valid as a proper governmental or public purpose and did not therefore violate Section 51 of Article III, Constitution of Texas.

In the course of the above opinion, it was pointed out that, "The determination of what constitutes a 'public purpose' for which a State may expend moneys has been held to be primarily a legislative function... and the determination of the legislative body of the matter has been held to be not subject to be reversed except in instances where such determination is palpably and manifestly arbitrary and incorrect. State ex rel. McClure v. Hagerman, 155 Ohio St. 320, 98 N.E. 2d 835 (1951)." In accord, 16 C.J.S. 768, Sec. 151 (5), Constitutional Law.

In this connection, it should be observed that the benefits to the State from an expenditure for a public purpose is in the nature of consideration and the funds expended therefore are not a gift even though private persons are benefitted therefrom." Attorney General Opinion No. V-1067 (1950) Likewise, this office also concluded in Attorney General Opinion No. C-530 (1965):

"It is plain that an expenditure is not necessarily barred because individuals as such may profit...", citing authorities. In accord, 51 Am. Jur. 381 Taxation, Sec. 330, et seq.

In Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W. 2d 79 (1940), our Supreme Court upheld the constitutionality of the erection of public low rent housing projects against the contention that the same was a gift to individuals and therefore unconstitutional.

In the opinion the court held that the Legislative declaration of a certain thing to be for a public purpose or use must be given weight by the courts, and the determination of that question

depends upon the character of the use and not the extent thereof. The Court further observed that, "It is immaterial if the use is limited to the citizens of a local neighborhood, or that the number of citizens likely to avail themselves of it is inconsiderable, so long as it is open to all who choose to avail themselves of it."

The Supreme Court later in Friedman v. American Security Company of New York, 137 Tex. 149, 151 S.W. 2d 570, upheld the Unemployment Compensation Act, against the contention that it violated the constitutional prohibitions against gift or appropriations of public funds for a private purpose. The Court again took a liberal view and held that"... no court ought to say that such a purpose is outside of the administration of government." It reasoned that, "The administering of government..,covers and embraces a very large field of action... It certainly serves a public purpose... is of very vital concern to the State, and to every inhabitant thereof. Unemployment always has had, and always will have, a very profound influence upon the public welfare. The evils which attend it permeate every part of our social, economic, and political structure... this Act was intended to lessen these evils..."

The promotion of education, like unemployment, must be likewise considered to serve a public or governmental purpose. It has a direct and substantial effect upon employment, with all of the attendant social, economic, and political ramifications. That private schools or individual recipients may

incidentally benefit from the tuition scholarships we believe is immaterial and does not render the character of the purpose any less public or governmental.

One other constitutional question raised by at least one of the bills as to whether the payment of tuition which benefits privately supported schools, some of which may be denominational, is prohibited by Article 1, Section 7, Constitution of Texas, has been previously determined by this office in Attorney General Opinion No. C-644 (1966), holding that it is immaterial that private schools, though denominational, are utilized as the pipe-line through which a public expenditure is made, "the test being not who receives the money, but the character of the use for which it is expended."

## SUMMARY

Senate Bills 631 and 485 would not be unconstitutional in appropriating moneys for tuition scholarships for students to attend private universities or colleges, although some are denominational, since such state program for the promotion of education is for a public governmental purpose and benefit to the individual or institution is incidental.

Very truly yours,

CRAWFORD MARTIN
Attorney General of Texas

Prepared by George Kelton
Assistant Attorney General

APPROVED
OPINION COMMITTEE

Kerns Taylor, Chairman

Houghton Brownlee
Bob Crouch
Roger Tyler
Fielding Early
Ray McGregor
W. O. Shultz

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant